UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-81310-CIV-MARRA

CROSS MATCH TECHNOLOGIES, INC.,

Plaintiff,

vs.

CROSSRESOLVE, LLC,

Defendant.
_____/

## OPINION AND ORDER

This matter is before the Court on Defendant, CrossResolve, LLC's, Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (DE 8). The motion is ripe for review. For the following reasons, the motion is denied.

### I. Background

This action arises out of a trademark dispute between two companies whose names both begin with the word "cross." Plaintiff Cross Match Technologies, Inc. ("Cross Match"), which was founded in 1996, is in the business of providing interoperable biometric identity management systems, applications, and services. (DE 1 ¶ 2.) Its customers include financial institutions, retail organizations, governments, law enforcement and intelligence agencies, defense departments, and private enterprises. (DE 1 ¶ 2.) Cross Match provides hardware and software as well as consultation, installation, maintenance, and product training services. (DE 1 ¶¶ 3–4.)

Cross Match alleges that Defendant CrossResolve, LLC ("CrossResolve") has sought to take advantage of Cross Match's reputation and goodwill by operating under a company name that is

1

allegedly "very similar to and readily confusable with" Cross Match's name. (DE 1 ¶ 6.) Furthermore, Cross Match alleges that CrossResolve offers similar services as Cross Match. (DE 1 ¶ 6.) Cross Match also asserts that CrossResolve has infringed on its trademarks by using a trademark that is "highly similar to and readily confusable with" Cross Match's marks. (DE 1 ¶ 23.)

Cross Match makes several allegations regarding CrossResolve's activities in, or directed into, Florida. Cross Match asserts that CrossResolve uses its allegedly infringing mark to advertise, promote, and sell its services and products in this judicial district (and elsewhere) and that such conduct creates a likelihood of confusion, mistake, or deception among consumers as to source, sponsorship, or affiliation. (DE 1 ¶¶ 22, 38.) For example, CrossResolve allegedly attends industry trade shows in Florida, including one called the Global Identity Summit (the "Summit") in Tampa, Florida, at which CrossResolve displays its trademark on marketing and promotional materials. (DE 1 ¶ 26, 34.) Cross Match further asserts that CrossResolve displays its allegedly infringing mark and advertises, promotes, and sells its services and products on its website. (DE 1 ¶¶ 24, 34.) Cross Match also states that CrossResolve's website lists Cross Match as a suggested vendor even though the two companies "have no business relationship whatsoever." (DE 1 ¶ 26.)

Cross Match sued CrossResolve asserting federal claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, state common law claims, and an unfair competition claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* CrossResolve moved to dismiss for lack of personal jurisdiction.

In support of its motion, and to contest Cross Match's allegations, CrossResolve submitted the declaration of Valerie Evanoff, CrossResolve's Chief Executive Officer and sole owner. (DE 8-1.) In her declaration, Evanoff asserts that CrossResolve "does not conduct business, and has never

conducted business, in the State of Florida." (DE 8-1 ¶ 7.) Directly refuting Cross Match's allegation in its complaint, Evanoff asserts that CrossResolve "does not, nor has it ever, advertise, market, promote, service, or sell any services or otherwise solicit any business in Florida." (DE 8-1 ¶ 24.) She also disputes Cross Match's allegation that CrossResolve identified Cross Match on its website as a vendor. (DE 8-1 ¶ 37.) Evanoff also explains that CrossResolve is not in the business of selling products of any kind and thus has never sold a product in Florida or anywhere else in the country. (DE 8-1 ¶ 30.) Instead, Evanoff states, CrossResolve is primarily in the business of providing consulting services in biometrics, forensics, and identity intelligence and as part of those services provides vendor-neutral testing and evaluation of hardware and software. (DE 8-1 ¶ 5.)

Evanoff further asserts that CrossResolve's sole place of business is in West Virginia and that CrossResolve does not have any offices or customers in Florida. (DE 8-1 ¶¶ 6, 9, 11.) According to Evanoff, CrossResolve "does not have, not has it ever had, any employees, sales representatives, consultants, officers, or directors residing or working in Florida." (DE 8-1 ¶ 12.) CrossResolve also has never been licensed, authorized, or registered to do business in Florida. (DE 8-1 ¶ 23.) Evanoff also states that CrossResolve "does not have, nor has it ever had, any person or subsidiary in Florida." (DE 8-1 ¶ 12.) She also claims that CrossResolve has never "derive[d] any revenue from services rendered in Florida" nor "directed any communication into Florida for purposes of advertisement, marketing, or solicitation." (DE 8-1 ¶¶ 25, 32.)

Evanoff also disputes Cross Match's allegations regarding the Summit. Evanoff states that CrossResolve "does not advertise, market, promote, service, or sell any services or otherwise solicit any business at the Global Identity Summit." (DE 8-1 ¶ 49.) She notes that she has attended the Summit every year as a speaker and attendee since 2005 while employed by various entities other

than CrossResolve and has continued to attend since she founded CrossResolve in 2012. (DE 8-1 ¶¶ 3, 44–47.) Evanoff states that CrossResolve does not send any employees to the Summit[1] nor has it derived any revenue from any customer or potential customer as a result of the Summit. (DE 8-1 ¶¶ 50–51.) Also, in previous years the Summit was held outside of Florida and, while it is now held in Tampa, Florida, Evanoff would attend the Summit regardless of its location. (DE 8-1 ¶¶ 52–54.)

In response, Cross Match attempts to rebut Evanoff's statements with declarations of two of its employees: its Manager of Global Inside Sales, Daniel Lomasney, and its Vice President of Marketing, John Hinmon. (DE 21; DE 22.) Lomasney's declaration is aimed at rebutting Evanoff's statement that CrossResolve has not directed any communication into Florida for purposes of advertisement, marketing, or solicitation. Lomasney describes how he received an email from Evanoff requesting a price quote for certain Cross Match products, which she needed to include in a proposal. (DE 21 ¶¶ 8–12.) The email came from Evanoff's CrossResolve email address and the signature block identified Evanoff as CrossResolve's CEO and displayed CrossResolve's logo and slogan. (DE 21 ¶ 9.)

Hinmon's declaration is aimed at describing CrossResolve's alleged marketing efforts in Florida. These include CrossResolve promoting itself at an exhibition booth at the 2013 Summit, Evanoff presenting a PowerPoint that contained CrossResolve's name and logo on each page at the

---

[1] In her second declaration, Evanoff implicitly admits this is not correct. *Compare* (DE 8-1 ¶ 50) ("CrossResolve, LLC does not send *any* employees to attend the Global Identity Summit.") (emphasis added), *with* (DE 27 ¶ 29) ("I am the only individual who has attended the Summit on behalf of CrossResolve. I have not sent *any other* employees to attend the Summit on behalf of CrossResolve.") (emphasis added). Evanoff's attendance at the Summit (as well as other events in Florida) on behalf of CrossResolve also renders incorrect her prior statement that CrossResolve "does not have, nor has it ever had, any employees, sales representatives, consultants, officers, or directors residing or working in Florida." (DE 8-1 ¶ 12.)

2013 Summit, and CrossResolve sponsoring the 2014 International Joint Conference on Biometrics ("IJCB"). (DE 22 ¶¶ 59–60, 74–76, 83.) Hinmon explains that the Summit (previously called the Biometric Consortium Conference) has taken place in Tampa, Florida every year since at least 2011, is considered "the most important biometrics conference in the United States," and is a "trade show in the classic sense." (DE 22 ¶¶ 1, 9–10, 25–27). Hinmon notes multiple instances of CrossResolve touting its annual participation in the Summit on its website, including via sessions presented or moderated by Evanoff. (DE 22 ¶¶ 40–42, 47–48, 72–74, 81, 83, 85–87.)

Hinmon further found a webpage on CrossResolve's website related to the 2014 International Joint Conference on Biometrics ("IJCB"), which was held in Clearwater, Florida. (DE 22 ¶¶ 59–60.) The webpage stated that CrossResolve was a sponsor of the 2014 IJCB. (DE 22 ¶ 60.) Through further internet research outside CrossResolve's website, Hinmon discovered that CrossResolve was a "Silver Sponsor" of the 2014 IJCB and that such sponsors pay at least $3,000 for the benefits of having their logos displayed on the IJCB conference webpage, posters at the conference, the final program booklet, and the conference bag. (DE 22 ¶¶ 63–65.)[2]

In reply, CrossResolve submits another declaration of Evanoff. (DE 27.) This declaration is primarily devoted to minimizing the extent of its Florida activities and rebutting the suggestion in Hinmon's declaration that these activities had a business or marketing purpose rather than an educational purpose.

---

[2] The information found on websites other than CrossResolve's are arguably hearsay and the sources are arguably unauthenticated, but CrossResolve has failed to raise any such objections to the admissibility of this information and has thus waived them for the purpose of this motion. CrossResolve's only evidentiary objection is that Hinmon lacks personal knowledge for some of his assumptions about CrossResolve's motivations for certain activities. This objection is moot because none of these statements are necessary to the Court's analysis of personal jurisdiction.

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.* (quoting *Sculptchair*, 94 F.3d at 627). The court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## III. Discussion

Because Cross Match's only federal claims are based on the Lanham Act, which is silent regarding service of process, and Cross Match otherwise alleges only state-law claims, state law informs whether the Court has personal jurisdiction over CrossResolve. *Sculptchair*, 94 F.3d at 626–27; *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985). The Court engages in a two-part inquiry to determine whether it has personal jurisdiction over a nonresident defendant. First, it determines whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.

1996). Second, it determines whether that exercise comports with the Due Process Clause of the Fourteenth Amendment. *Id.* Both prongs must be satisfied for the court to have personal jurisdiction over the defendant. *Id.*

### A. Long-Arm Statute

Florida's long-arm statute authorizes an exercise of personal jurisdiction where a cause of action arises from a defendant "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). For the purposes of Florida's long-arm statute, trademark infringement is a tortious act. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). Furthermore, the "tortious act" provision of Florida's long-arm statute is satisfied where a website containing an infringing mark is accessible in Florida. *Id.* at 1353–54; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283–84 (11th Cir. 2008); *cf. Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214–16 (Fla. 2010) (holding that tortious act provision of long-arm statute is satisfied in defamation action where alleged defamatory material is posted on a website that is accessible and accessed in Florida). This is so regardless of whether the tortfeasor was outside Florida when he created the website or posted the alleged infringing material. *Louis Vuitton*, 736 F.3d at 1354. A tortfeasor's "physical presence in Florida is not required to obtain personal jurisdiction" under this provision. *Sierra Equity Grp., Inc. v. White Oak Equity Partners*, LLC, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

Here, Florida's long-arm statute is satisfied. In its complaint, Cross Match alleges that CrossResolve displays its allegedly infringing CrossResolve mark on its website. (DE 1 ¶ 24.) While Cross Match does not specifically allege that CrossResolve's website is accessible in Florida, this fact is undisputed. Evanoff admits that CrossResolve's website "is accessible to anyone in the

world." (DE 8-1 ¶ 42.)[3] Because Cross Match establishes that CrossResolve maintains a website accessible in Florida that displays the allegedly infringing mark, Cross Match makes out a prima facie case of personal jurisdiction under the long-arm statute. *See Louis Vuitton*, 736 F.3d at 1353–54; *Licciardello*, 544 F.3d at 1283–84; *Marshall*, 39 So. 3d at 1214–16. CrossResolve concedes this. (DE 8 at 7) ("As for Defendant's website, all that is required to invoke jurisdiction under the tortious activity provision of Florida's long-arm statute appears to be that the website be accessible in Florida.").[4]

### B. Due Process

The Court next turns to the due process inquiry. The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process.[5] *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

---

[3] Evanoff qualifies her admission by stating that the "website does not target Florida." (DE 8-1 ¶ 42.) While perhaps relevant to due process, this does not affect the analysis under the tortious act provision of the long-arm statute. If a website displays tortious content and is accessible in Florida, then the long-arm statute is satisfied whether or not the website targets Florida. *Marshall*, 30 So. 3d at 1216 & n.11.

[4] As CrossResolve concedes that its website's accessibility alone satisfies the long-arm statute's tortious act provision, it is unclear why CrossResolve devotes one third of its motion and a page of its reply to arguing that other provisions of the long-arm statute are unmet or that other facts do not satisfy the tortious act provision. (DE 8 at 4–7; DE 26 at 8–9.) These arguments are superfluous. Cross Match must only satisfy the long-arm statute once; it need not do so on multiple grounds.

[5] Cross Match does not argue that the Court has general personal jurisdiction over CrossResolve.

*Id.* The first test focuses on whether there is a "direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (citation omitted). The second inquiry assesses whether the defendant's contacts with the state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357.[6] The third test considers "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello*, 544 F.3d at 1288).

To satisfy due process, Cross Match relies on more than the facts that CrossResolve's website displays the allegedly infringing mark and is accessible in Florida. In addition to allegations regarding the website, Cross Match asserts that CrossResolve—using its allegedly infringing mark—advertises, promotes, and sells its services and products in this judicial district and displays its allegedly infringing mark on marketing and promotional materials at trade shows in this state. (DE 1 ¶¶ 22, 26, 34, 38.) Taken as true, these allegations satisfy the due process requirements. *See Louis Vuitton*, 736 F.3d at 1356–58.

The Court's inquiry does not end with these allegations, however, because CrossResolve rebuts them with Evanoff's declaration. Because CrossResolve has submitted evidence that raises a meritorious challenge to personal jurisdiction, the burden shifts to Cross Match to submit conflicting evidence that proves jurisdiction. *See Marshall*, 557 F.3d at 1295. CrossResolve fails to

---

[6] The second inquiry may also be satisfied by an alternative "effects test," which the Court finds unnecessary to apply here. *See Louis Vuitton*, 736 F.3d at 1356.

submit any evidence to rebut Evanoff's claims that CrossResolve never identified Cross Match on its website, that CrossResolve only provides services and thus never sold any goods in Florida, that CrossResolve has never been authorized to do business in Florida, and that CrossResolve has never sold services in Florida and does not have any Florida customers. Therefore, for the purpose of resolving CrossResolve's motion, the Court credits Evanoff's statements on these issues over Cross Match's allegations in its complaint.

Turning to the evidence that Cross Match did submit to rebut Evanoff's statements, Lomasney's declaration is unhelpful to Cross Match in meeting its burden to establish jurisdiction. While Lomasney rebuts Evanoff's statement that CrossResolve has never directed any communication into Florida for purposes of solicitation, Cross Match fails to explain how the email from Evanoff that Lomasney describes relates to any of Cross Match's causes of action. In the email, Evanoff sought a price quote from Cross Match. Even though the email displayed the allegedly infringing mark, it cannot seriously be contended that the use of the mark in an email to Cross Match itself could cause the likelihood of confusion or deception required for a trademark infringement or unfair competition claim.[7] Cross Match knows who it is, and it would not be confused by receiving the email. Therefore, the Court does not consider this contact with Florida in determining whether Cross Match has met its burden. *See Louis Vuitton*, 736 F.3d at 1356 ("Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action . . . ."). As Lomasney's declaration only addresses a contact unrelated to Cross Match's causes of action, it is

---

[7] The "likelihood of confusion" element is common to Cross Match's Lanham Act and state law claims. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012).

irrelevant to the Court's determination of personal jurisdiction.

Hinmon's declaration is more helpful to Cross Match. Hinmon adequately—and relevantly—rebuts many of Evanoff's statements.[8] Based on Hinman's declaration and supporting exhibits, and resolving all inferences and conflicts in the evidence in Cross Match's favor as the Court must at this stage, *Stubbs*, 447 F.3d at 1360, there is sufficient record evidence to support the conclusion, for jurisdictional purposes, that CrossResolve has indeed advertised, marketed, or promoted its services in Florida on multiple occasions while using its allegedly infringing name or mark.[9]

In particular, CrossResolve used its allegedly infringing mark to promote itself at the 2013 Summit and the 2014 IJCB, which were both held in Florida. At the 2013 Summit, Evanoff showed a PowerPoint presentation that displayed CrossResolve's allegedly infringing name and mark on every page. On the last page, it displayed Evanoff's contact information as the CEO of CrossResolve and CrossResolve's website URL. This reasonably implies that the presentation was at least in part, as Hinman put it, used as a "sales pitch." Also at the 2013 Summit, as Evanoff admits in her second declaration, CrossResolve had a podium at an exhibition booth. Evanoff concedes that she left pamphlets at CrossResolve's podium. It can be reasonably inferred that these pamphlets displayed

---

[8] The Court agrees with CrossResolve, however, that the numerous paragraphs in Hinmon's declaration regarding *Cross Match's* activities and underlying motivations regarding the Summit, STEM outreach, and various marketing strategies are irrelevant to whether the Court has personal jurisdiction over *CrossResolve*.

[9] Evanoff's activities in Florida as CrossResolve's agent are attrubted to CrossResolve for purposes of personal jurisdiction. *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (per curiam) ("[I]t is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state."); *see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (holding that general agency principles apply in personal jurisdiction analysis). The Court thus refers to Evanoff's activities as CrossResolve's activities.

CrossResolve's allegedly infringing name and mark. Furthermore, the newsletter discussing the booth, which is an exhibit to Evanoff's second declaration, notes that CrossResolve was one of "six companies *promoted* in the booth." (DE 27-18 at 7) (emphasis added). As noted by Evanoff herself, the organization that purchased the booth "is a regional *marketing and business development* organization." (DE 27 ¶ 34) (emphasis added). Thus, it can at least reasonably be inferred that CrossResolve used the booth to promote and market itself at the Summit. Evanoff also admits that CrossResolve was a "Silver Sponsor" of the 2014 IJCB. This means that CrossResolve paid to have its logo—the allegedly infringing mark—displayed on posters and other materials at the conference.

These Florida[10] activities are sufficient under the facts of this case for the Court to exercise personal jurisdiction over CrossResolve without offending due process.[11] The first due process test—whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum—is satisfied because there is a direct causal relationship between the instances of CrossResolve's display of its allegedly infringing name and trademark in Florida and Cross Match's claims.

The second test, which assesses whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, is also satisfied. Indeed, this

---

[10] Cross Match has actually failed to support the allegation in its complaint that CrossResolve is "selling, advertising, and promoting *within this judicial district*." (DE 1 ¶ 22) (emphasis added). The activities that Hinmon describes took place in this state but *outside* the Southern District of Florida. Nevertheless, it is a defendant's contacts with the forum state, not a particular judicial district, that are relevant to personal jurisdiction. The Court notes that CrossResolve has not objected to venue.

[11] Because these activities are sufficient to satisfy the due process inquiry, it is unnecessary to address whether other facts could also satisfy due process, such as certain content on CrossResolve's website, a magazine distributed in Florida containing CrossResolve advertisements, and CrossResolve's involvement in an educational program at a Florida university.

test is satisfied whenever, as in this case, a nonresident defendant voluntarily enters the forum state and commits a tortious act within the state's borders that forms the basis of the cause of action. *Elkhart Eng'g Corp. v. Drnier Werke*, 343 F.2d 861, 867–68 (5th Cir. 1965). Furthermore, advertising within a particular state is conduct that demonstrates purposefull availment of the privileges of doing business within that state and is such conduct for which one should reasonably anticipate being haled into court in that state. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1545 (11th Cir. 1997); *see also Worthy v. Bartley*, 307 F. Supp. 2d 1244, 1248 (M.D. Ala. 2004). There is sufficient evidence in the record to support the conclusion that CrossResolve's display of its allegedly infringing name and mark in Florida at the 2013 Summit and 2014 ICJB was deliberate, not fortuitous. CrossResolve knew these events were in Florida and sent its CEO to them. A company should reasonably expect to be haled into court for a trademark infringement suit in a state where it physically and intentionally displayed the allegedly infringing mark.

CrossResolve makes several arguments to minimize the effect of its Florida activities to defeat a finding of purposeful availment. CrossResolve points out that *other* PowerPoints that Evanoff presented in other years did not mention CrossResolve. But the fact that CrossResolve did not display the allegedly infringing mark on some occasions does not negate the fact that it did so on others. Regarding the IJCB, CrossResolve claims that it sponsored the IJCB "to support the advancement of the science behind the industry" rather than for the purpose of advertising. (DE 26 at 7.) But nothing stopped CrossResolve from donating to the conference without obtaining the *quid pro quo* of having its logo displayed on posters and other materials. Construing all reasonable inferences in Cross Match's favor, CrossResolve's sponsorship of the 2014 IJCB had at least some marketing purpose. And, in any event, CrossResolve's subjective motivations do not change the fact

that it deliberately entered the state and displayed the allegedly infringing mark.

CrossResolve also argues that it never "targeted" Florida residents. It notes that the booth in which it participated at the Summit focused on West Virginia and that its sponsorship of the IJCB targeted international attendees rather than Florida residents. CrossResolve's argument is misplaced. In cases where personal jurisdiction is premised on a nonresident defendant's actions *outside* the forum state, personal jurisdiction may still be established if the defendant's actions are "purposefully directed" (i.e., targeted) toward residents of the forum state or if the defendant's conduct is "expressly aimed" at the forum state and likely to cause injury there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Calder v. Jones*, 465 U.S. 783, 789 (1984). In other words, personal jurisdiction may be exercised on such grounds *despite* a nonresident defendant's lack of physical contacts with the forum state. *Burger King*, 471 U.S. at 476.

These relatively recent extensions of a court's power to exercise personal jurisdiction supplement, but do not supplant, more traditional bases for establishing personal jurisdiction. *See Louis Vuitton*, 736 F.3d at 1357 ("The 'effects test,' however, does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike."). Here, it is unnecessary to determine whether these supplemental bases for exercising personal jurisdiction are established because there is record evidence to support the conclusion that CrossResolve engaged in physical and deliberate tortious conduct *within* this state and the causes of action arise from that conduct. *See Elkhart*, 343 F.2d at 867–68 (holding that court may exercise personal jurisdiction over a nonresident defendant for any tort physically committed within its borders). There is no reason to determine whether CrossResolve's conduct was directed *toward* Florida when the evidence suggests that it occurred *within* Florida.

14

Finally, the exercise of personal jurisdiction in this case comports with traditional notions of fair play and substantial justice. CrossResolve has not provided any basis for finding that litigation in this district will impose a burden on it. Indeed, the fact that Evanoff, CrossResolve's CEO, travels to Florida at least annually suggests no burden exists. Also, the state of Florida has an interest in adjudicating this dispute because Cross Match's principal place of business is in Florida and at least some of the alleged infringement that forms the basis of its claims occurred in Florida. *See Keeeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." (quoting *Leeper v. Leeper*, 319 A.2d 626, 629 (N.H. 1974)). The plaintiff's interest in obtaining convenient and effective relief also supports an exercise of personal jurisdiction due to Cross Match's principal place of business being in the state. Finally, CrossResolve does not provide any reason the judicial system's interest in resolving this dispute militates against exercising personal jurisdiction.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant, CrossResolve, LLC's, Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (DE 8) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of June, 2016.

_____
KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE